## THE STATE v. McEVOY & McCLARITY ET AL.

1. **Intoxicating Liquors**: SEIZURE AND CONDEMNATION: CLAIM FOR POSSESSION BY RAILROAD COMPANY. Certain intoxicating liquors were shipped by the Seipp Brewing Co., of Elroy, Wis., by rail to Bigelow, Minn. The way-bill, under the heading "Consignee, Marks and Destination," read as follows: "The Seip Brewing Co. Notify McEvoy & McClarity, Bigelow, Minn." The liquors were delivered to defendants at Bigelow, where they kept a saloon; but they also kept a saloon at the neighboring town of Sibley, Iowa, to which the liquors were conveyed by the defendants, and where they were seized and condemned to destruction under the laws of Iowa. The Seipp Brewing Co. drew upon the defendants at Sibley, Iowa, for the price of the liquors, but defendants refused to pay the draft. The bill of lading was attached to the draft, but was not in evidence, nor was it shown who appeared by the bill of lading to be the consignee of the liquors. It was shown, however, that the same company had made prior like consignments, which had been in like manner delivered to defendants, and that drafts to cover the same had been sent to Sibley for collection, and had been paid by defendants. The railroad company appeared in the proceeding against the liquors, and claimed possession thereof, on the ground that the Seipp Brewing Co. was the consignee, and that the delivery to defendants at Bigelow was a mistake, and that their possession was wrongful; and that, as the railroad company had not violated the law by transporting the liquors into Iowa, they should be restored to it for delivery to the proper consignee in Minnesota. *Held* that this claim could not be maintained,

and that the liquors were properly condemned.    For a more detailed statement of the facts, see opinion.

## Appeal from Osceola District Court.

### FRIDAY, JUNE 11.

UPON an information filed before a justice of the peace charging defendants McEvoy and McClarity with keeping intoxicating liquors with intent to sell the same contrary to law, a search-warrant was issued, and a large quantity of bottled beer was seized thereon.    The Chicago, St. Paul, Minneapolis & Omaha Railroad Company filed a claim for the possession of the liquor, alleging that it had been mistakenly and wrongfully delivered to defendants in Minnesota, who were not the owners, nor in the rightful possession, thereof, and that the railroad company neither carried nor kept the liquor with the purpose of violating the statute of Iowa.    Judgment was rendered against the defendants and the railroad company by the justice of the peace, and the liquors were ordered to be destroyed.    Upon an appeal to the district court a like judgment was rendered, from which the railroad company appeals to this court.

*J. H. & C. M. Swan* and *C. H. Bullis*, for appellant.

*S. M. Marsh, District-attorney,* and *A. J. Baker, Attorney-general,* for the State.

BECK, J.—I.    The record discloses the following facts: Defendants McEvoy and McClarity keep a saloon at Bigelow, in the state of Minnesota, and another, or a place for the unlawful keeping for sale of intoxicating liquors, at Sibley, in this state.    These towns are not many miles apart.    The beer in question, being bottled and contained in 140 boxes, with 60 other like boxes, was shipped from Elroy, Wisconsin, to Bigelow, Minnesota.    The way-bill accompanying the liquor is as follows:

"Chicago & Northwestern Railway Co., November 29, 1884. Car initials, C. N. W. R., fgts. Car No. 7,836. W. B. No. 14,467.

"WAY-BILL FOR FREIGHT FORWARDED FROM SOUTH BRANCH TO BIGELOW, MINN.

| Consignor. | Consignee, Marks, and Destination. | Description of Articles. | Weight. | Rate. | Unpaid. |
|---|---|---|---|---|---|
| Seipp Brewing Co., 206. | The Seipp Brewing Co. Notify McEvoy & McClarity, Bigelow, Minn. | 250 Bx Bot. Beer. | 20,000 | 44 | 88.00 |
| | | 1 Pa. Show-cards O. R. L. | 25 | 110 | .28 |
| | | (201) | 20,025 | | 88.28 |
| | | Perishable. | | | |

"Agent at destination will examine and correct errors.

"Western Ry. Weighing Association.

"Actual weight: gross, 427; tare, 247.

"Weighed at St. Branch, Ill."

When the beer reached Bigelow, the station agent entered the way-bill in his freight-book, and delivered the liquor to one of the defendants, who was waiting to receive it when the cars reached the station. The agent knew the beer was for defendants, and the boxes were marked with their initials. They at once caused them to be hauled to their saloon in Bigelow, and the same night sent a part of them by wagon to their saloon at Sibley, and within a day or two the remainder of the 140 boxes were transported in the same way to the same place. The railroad company claims, and its station agent testifies to that effect, that the way-bill was so entered in the freight-book as to show defendants to be the consignees through mistake, and, through a like mistake in believing that they were the consignees, the beer was delivered to them. The consignor drew on the defendants for the price of the beer, and sent the draft for collection, with the bill of lading attached, to a bank at Sibley. The draft was presented about the time the beer was seized by the officers, and payment was refused. The bank often had before this

like drafts for beer on the defendants for collection. The bill of lading attached to the draft for the price of the liquor does not appear to have been given in evidence, and we have nothing before us showing its contents. It is not made to appear that defendants were not named as the consignees in the bill of lading, or that it was not assigned to them, or that delivery of the beer to them was in any manner made conditional upon the payment of the draft.

II.    Counsel for the railroad company insist that the beer was delivered to defendants through mistake; and that, as their possession was wrongful, they acquired no property in it, and that the company, therefore, is entitled to the restoration of its possession, which, being without any unlawful intent, the court below should have ordered. We have no occasion to determine the legal principles upon which counsels' position is based; but, for the purpose of the case, we may assume they are correct. But we cannot concur in the conclusion as to the facts upon which counsel base their position.

III.    It is plain that the way-bill, upon the most casual inspection, shows that defendants were, with the Seipp Brewing Company, consignees of the beer. They were, with the brewing company, named as consignees, and of course could receive the liquor from the railroad company. It was not necessary for the other consignee to formally unite in its receipt. They are to be regarded as having received the beer for all the consignees. The word "notify" appearing above their names does not necessarily indicate that they were not consignees. It simply indicates that notice to them as such is to be given. It is true that it is customary to direct upon the face of the way-bill what person shall be notified of the arrival of the consignment; and in such case it often happens that such person is not a consignee. But should the way-bill show, as in this case, that a person is a consignee, and direct notice to be given to him, this would not require

the plain language of the bill to be disregarded, and such person to be considered as not a consignee.

IV.   But let it be admitted that the way-bill shows that defendants are not consignees.   This bill is not a writing embodying a contract, or conferring or restricting power or authority.   It is simply a memorandum of directions made by the employes of the railroad company.   It cannot be regarded as evidence to take the place of the bill of lading in order to show the consignee of the beer.   It cannot be considered to establish that defendants were or were not consignees.   This position demands nothing in its support other than the mere statement of facts.

V.   The bill of lading, as we have said, is not before us, and there is no evidence in the abstract touching its contents. All we know is that there was one attached to the draft which defendants would not pay.   We cannot presume that the Seipp Brewing Company was the consignee.   We must rather presume that defendants were.   It often happens, in the course of the business of carriers, that drafts upon consignees for the price of the consignments accompany or are attached to bills of lading.   Ordinarily, the goods are delivered only upon presentation of the bills of lading.   But if the carriers deliver the goods to the consignee,—to the real party intended to receive them, and so mentioned in the bill of lading, without notice of any claim or demand of the consignor,—such delivery would be good, and would not be a breach of duty of the carrier, rendering him liable in an action by the consignor.   It is plain that in such a case the carrier would not be liable upon the mere ground that the bill of lading was not produced when the goods were delivered; and surely, if the carrier had been accustomed to carry like consignments from the same consignor, and deliver them to the consignee, this would be evidence of the course of business between the parties which would tend to establish assent of the consignor to the delivery, and the good faith of the carrier, and his want of notice from the

consignor to hold the goods until the bill of lading should be presented. In such a case the transaction would be simply the delivery of property to one entitled to receive it. In this case the evidence shows that there had been other shipments of beer to defendants by the brewing company, and the liquor had been received by them. No conditions were imposed to the effect that the beer should not be delivered except upon production of the bill of lading. A significant fact is disclosed by the evidence. It is this: The beer was shipped to Bigelow. The consignor sent his draft and bill of lading to Sibley. Of course, the liquor was to be delivered at Bigelow. It is to be presumed that, if the consignor intended that the beer should be delivered only upon presentation of the bill of lading, it would have been sent to Bigelow; thus avoiding delay in the delivery, which was doubtless regarded as important, in view of the fact that the liquor was described as "perishable." The carrier was thus advised to deliver the liquor promptly. This was a prudent direction, in view of the facts that the shipment was made in December, in a northern latitude. We conclude, upon the facts of the case, that the district court was justifiable in finding that the beer was lawfully delivered to defendants, and that the railroad company therefore cannot recover in this proceeding.

VI. The railroad company objected to the introduction, at the trial in the court below, of certain entries in its freight-book kept at Bigelow, showing the delivery of prior consignments to defendants of beer made by the consignor. The evidence, we think, was pertinent and material, as it tended to show the course of business between the parties; thus establishing the good faith of the railroad company, and raising the presumption that it had no notice that the beer should be held until it was paid for.

The foregoing discussion disposes of all questions in the case argued by counsel. The judgment of the district court is                                                    AFFIRMED.